

# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**JUAN COLON, on behalf of himself and all others
similarly situated,**

          **Plaintiff,**

**v.**

**COUNTRYWIDE FINANCIAL CORPORATION,**
a California corporation; **BANK OF AMERICA
CORPORATION;** a North Carolina corporation;
**FULL SPECTRUM LENDING DIVISION,** a
California corporation; **COUNTRYWIDE BANK,
FSB,** a California corporation; **COUNTRYWIDE
HOME LOANS, INC A DIVISION OF
COUNTRYWIDE BANK, FSB,** a California
corporation;

          **Defendants.**

_____ /

**CASE NO.:** 6.08-cv-1687-orl-22KRS

**JUDGE:**

**CLASS ACTION COMPLAINT**

**(JURY TRIAL DEMAND)**

Plaintiff, **JUAN COLON,** ("Plaintiff"), on behalf of himself and all others similarly situated, by and through undersigned counsel, files this Class Action Complaint against Defendants, **COUNTRYWIDE FINANCIAL CORPORATION,** a California corporation; **BANK OF AMERICA CORPORATION;** a North Carolina corporation; **FULL SPECTRUM LENDING DIVISION,** a California corporation; **COUNTRYWIDE BANK, FSB,** a California corporation; **COUNTRYWIDE HOME LOANS, INC. A DIVISION OF COUNTRYWIDE BANK, FSB,** a California corporation, and in support thereof, states as follows:

## INTRODUCTION

1.     This is a consumer class action lawsuit brought on behalf of Plaintiff, individually, and on behalf of persons throughout the United States whose name, address, Social Security number, mortgage loan number and various other loan and application information ("Confidential Information") was intentionally, recklessly and/or negligently breached and sold by Defendants, their employees and/or agents from January 1, 2006 to the present.

2.     Defendants deliberately, recklessly and/or negligently failed to maintain reasonable procedures designed to protect the Plaintiff's Confidential Information.  As a result of Defendants' deliberate, intentional, reckless and negligent failure to protect Plaintiff's Confidential Information, an employee of the Defendants was able to obtain Plaintiff's and the Class Members' Confidential Information and sell it to third-parties without the consent of the Plaintiff and Class Members for no permissible purpose under the law.

3.     Defendants' actions and inactions constitute violation of Fair Credit Reporting Act ("FCRA"), the Gramm-Leach-Bliley Act ("GLBA") as well as common law negligence, negligence per se and breach of contract, invasion of privacy, constitutional right to privacy, bailment and conversion.

4.     Plaintiff seeks damages suffered as a result of Defendants' practices including but not limited to statutory damages, compensatory damages and injunctive relief.

## PARTIES

5.     Plaintiff Juan Colon is a resident of Seminole County, Florida.

6.     Defendant Countrywide Financial Corporation ("CFC") is a corporation organized under Delaware law and has its principal place of business in Calabasas, California. CFC is a wholly owned subsidiary of defendant, Bank of America ("BOA").

7.     BOA is a corporation organized under Delaware law and has its principal place of business in Charlotte, North Carolina. BOA provides various banking and financial services and products throughout the United States, including Ohio.

8.     Full Spectrum Lending ("FSL") is a corporation organized under Delaware law and has its principal place of business in Calabasas, California. FSL is a wholly owned subsidiary of CFC.

9.     Countrywide Bank, FSB ("CB") is a corporation organized under Delaware law and has its principal place of business in Calabasas, California. CB is a wholly owned subsidiary of CFC.

10.     Countrywide Home Loans, Inc. ("CHL") is a corporation organized under Delaware law and has its principal place of business in Calabasas, California. CHL is a wholly owned subsidiary of CFC.

11.     Defendants CFC, BOA, FSL, CB and CHL will be collectively referred to as "Defendants".

12.     The Defendants were the agents, servants, representatives, successors, successors-in-interest, and employees of each other co-defendants, and were acting within the course and scope of said agency and employment.

## JURISDICTION

13.     Plaintiff restates and realleges each and every paragraph of this Complaint as if fully rewritten herein.

14.     This Court has jurisdiction over the federal claim herein pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claims herein under 28 U.S.C. § 1367. Further, this Court also has subject matter jurisdiction over this nationwide class action

3

pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states different than Defendants. *See* 28 U.S.C. § 1332(d)(2)(A).

15.    This Court has personal jurisdiction over Defendants because they conduct substantial business in Florida.

16.    Venue properly lies in this district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the acts giving rise to Plaintiff's claims occurred in this district.

## FACTUAL BACKGROUND

17.    Plaintiff restates and realleges each and every paragraph of this Complaint as if fully rewritten herein.

### Industry Standards and Defendants' Assurances

18.    The Federal Trade Commission has issued: "Protecting Personal Information: A Guide for Business." This Guide tells businesses how to develop a "sound data security plan" to protect against identity theft. It states:

    a.    Understand the vulnerabilities of your computer system and follow the advice of experts in the field;

    b.    Keep an inventory of all computers and laptops where the company stores sensitive data;

    c.    Use social security numbers only for required and lawful purposes and do not store these numbers unnecessarily, such as for an employee or customer identification number;

d.  Encrypt the personal information particularly if the confidential information is shipped to outside carriers or contractors. In addition, the business should keep an inventory of all the information it ships;

e.  Do not store sensitive computer data on any computer with an Internet connection unless it is essential for conducting business;

f.  Use an intrusion detection system for detecting network breaches that is updated frequently to address new types of computer hacking;

g.  Maintain a central log file of security-related information to monitor activity on the network so as to spot and respond to attacks;

h.  Monitor outgoing traffic for signs of a data breach, watching for unexpectedly large amounts of data being transmitted from your system to an unknown user;

i.  If large amounts of information are being transmitted from the network, investigate to make sure the transmission is authorized;

j.  Have in place an implement a breach response plan;

k.  Check referenced or do background checks before hiring employees who will have access to confidential data;

l.  Regularly remind employees of your company's confidentiality and security standards for handling confidential data to keep customer information secure and confidential;

m.  Know which employees have access to consumers; confidential personally identifying information, paying particular attention to data like social security numbers and account numbers; and

n.    Have a procedure in place for making sure that workers who leave

your employ or transfer to another part of the company no longer have

access to confidential information, terminating their passwords, and

collecting keys and identification cards as a part of the check-out routine.

19.    CFC claims to be "America's leading home loan provider and [to] know with this position comes great responsibility to our communities and our customers." CFC further claims to be "committed to responsible lending practices, meaningful community development initiatives and providing a broad suite of products."[1]

20.    CFC further claims:

Your Privacy

The opportunities you deserve, the privacy you expect

Countrywide Financial Corporation, a trusted leader for over 30 years in the home loan industry, offers a wide range of financial products and services through our family of companies. The Countrywide family of companies is now part of the Bank of America family of companies.

Our primary focus is on empowering you to meet your homeownership and banking goals by offering a wide range of financial products and services. This notice explains how we protect and use your information in a safe, secure and responsible manner. When used in this policy, "we," "our," and "us" refer only to the Countrywide family of companies specifically identified in the section titled "Benefits to sharing within our family of companies and the other Bank of America companies" below and do not refer to the other Bank of America companies. This policy does not explain how the other Bank of America companies manage customer information and what actions you can take regarding how the other Bank of America companies use and share your information. Please visit bankofamerica.com/privacy for more information on the policy of the other Bank of America companies.

We offer you products and services at a lower cost or with greater convenience by sharing limited information within our family of companies,

---

[1] See, http://about.countrywide.com/about/about.aspx

within the other Bank of America companies, and with carefully selected business partners. [2]

21.   Defendants further promise:

<u>Your protection is our priority</u>

We strive to safeguard your data. We do this by:

- setting policies and procedures for carefully handling your information;
- limiting employee access to sensitive information;
- protecting against unauthorized access to customer data using data encryption, authentication, and virus detection technology;
- requiring service providers who do business with Countrywide to comply with privacy laws;
- auditing company security practices;
- monitoring our websites through recognized online privacy and security organizations such as Cybertrust Corporation; and conducting background checks on all employees and providing privacy training.[3]

22.   Defendant Full Spectrum Lending also represents that "we maintain stringent security standards to ensure that your private data remains safe.   We use advanced data encryption and storage technology to protect your confidential personal information, and we are a proud member of recognized online privacy and security organizations such as TruSecure® Corporation, and VeriSign™, Inc."

**Breach of Plaintiff's and Class Members' Confidential Information**

23.   Plaintiff financed or refinanced his mortgage with Defendants.   In the course of that financing or refinancing, Plaintiff provided Defendants with Confidential Information. Defendants collected Confidential Information from the Plaintiff.   Defendants state:

We collect information:

---

[2] See, http://my.countrywide.com/privacy.aspx
[3] *See* http://my.countrywide.com/privacy.aspx

a.  you provide us on applications and other forms (such as your phone, social security and account numbers, assets, income and employment history);

b.  about your transactions with us (such as your loan balance, payment history and other account information);

c.  about your credit history from a credit reporting agency;

d.  about you or your property from business partners and service providers (such as a property appraisal, purchase contract or membership number), or from current or past employers or other financial institutions when verifying information you provide on an application or other form; and

e.  about you from consumer purchasing and census data providers to develop competitive marketing programs for our customers.

We disclose some of this data to third parties (such as credit reporting agencies, regulators and loan investors).  We may share some of this information with companies performing services on our behalf (such as the vendor who prepares our monthly statements).  These service providers agree to keep information confidential and not use it for any other purpose.

24.  For at least two years, Defendants failed to follow FTC and their own guidelines and procedures, thereby allowing the theft and subsequent resale by an employee of the Confidential Information of more that 2 million consumers doing business with Defendants.

25.  On Friday, August 1, 2008, the FBI arrested Rene Rebollo, a Countrywide employee, for stealing and selling Confidential Information from as many as 2 million

Countrywide customers and mortgage applicants. Rebollo worked as a senior financial analyst at Defendant Full Spectrum's Pasadena office until July 2008.

26.    Over a two year period prior to his arrest, Rebollo copied information on about 20,000 Countrywide customers each week, using one of Defendants' unsecured computers.

27.    According to public reports, the information Rebollo copies included names, telephone numbers, addresses, social security numbers and other Confidential Information. Rebollo then resold the Confidential Information. The U.S. Attorney's office prosecuting Rebollo estimates that he may have obtained and compromised the Confidential Information or more than 2 million consumers doing business with Defendants.

28.    Rebollo was able to obtain this Confidential Information each week for a two year period because Defendants negligently failed to install reasonable security measures in a computer containing Confidential Information. Rebollo uses a simple thumb drive to download, resell and thus compromise Plaintiff's and Class Members' Confidential Information.

29.    Plaintiff has been notified that their Confidential Information was breached and sold, and thus Plaintiff has had his identity stolen.

30.    Although Defendants have known about the theft since at least July 2008, it was not until the first week of September that Defendants noticed Plaintiff and Class Members that some or all of their Confidential Information may have been stolen, sold and compromised. In the letter sent to Plaintiff and Class Members, Defendants place the burden on Plaintiff and Class Members to take steps to protect themselves from identity theft and misuse of their Confidential Information. Defendants have offered only to provide credit monitoring for a period of time, an insufficient remedy given the magnitude of the theft and the comprehensive nature of the Confidential Information that may have been compromised by the theft.

31.    Plaintiff's and Class Members' Confidential Information have been improperly and illegally sold and/or disclosed by employees and/or agents of Defendants.

32.    Plaintiff and Class Members did not authorized the employees of Defendants to access their Confidential Information for purposes of selling, brokering, or otherwise disseminating said information to unauthorized third parties.

### Consequences of Breach

33.    As defined in the Fair and Accurate Credit Transactions Act of 2003, Pub. L 08-159, Dec. 4, 2003 (FACTA) "identity theft" is a fraud that is committed or attempted, using a person's identifying information with authority.  Generally, identity theft occurs when a person's identifying information is used to commit fraud or other crimes.  These crimes include credit card fraud, phone or utilities fraud, bank fraud, and government fraud.  The Federal Trade Commission ("FTC") has stated that identity theft has been a serious problem in recent years, with approximately 9 million Americans as the victims of identity theft each year.[4]

34.    As the United States Government Accountability Office noted in a June 2007 report on Data Breaches ("GAO Report"), more than 570 breaches involving theft of personal identifiers such as social security numbers were reported by the news media from January 2005 through January 2006.[5]  As the GAO Report states, these data breaches involve the "unauthorized or unintentional exposure, disclosure, or loss of confidential personal information, which can include personally identifiable information such as Social Security numbers (SSN) or financial information such as credit card numbers."

35.    The GAO Report stated that identity thieves can use identifying data such as social security numbers to open financial accounts and incur charges and credit in a person's

---

[4]*See,* "About Identity Theft," in FTC Publication, Fighting Back Against Identity Theft, available at http://www.ftc.gov/bcp/edu/microsites/idtheft/comsu,ers/about-identity-theft.html.
[5]*See,* http://www.gao.gov/new.items/d07737.pdf.

10

name. As the GAO has stated, this type of identity theft is the "most damaging" because it may take some time for the victim to become aware of the theft and can cause significant harm to the victim's credit rating.

36.    In addition, the GAO states that victims of identity theft will face "substantial costs and inconvenience repairing damage to their credit records," as well as the damage to their "good name."

37.    According to the Federal Trade Commission (FTC), nine million Americans have their identities stolen each year."[6]  Identity theft victims must spend countless hours and money repairing damage to their good name and credit record.  Identity thieves use stolen personal information such as social security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.  In addition, a person whose personal information has been compromised may not see any signs of identity theft for years.  According to the United States Government Accountability Office, which conducted a comprehensive and extensive study of data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years.  As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[7]

38.    Identity theft crimes often include more than just crimes of financial loss.  Identity thieves also commit various types of government fraud, such as: obtaining a driver's license or official identification card in the victim's name but with their picture; using the victim's name and social security number to obtain government benefits; or filing a fraudulent tax return using the victim's information.  In addition, identity thieves may obtain a job using the victim's social

---

[6] *See,* FTC Identity Theft Site, http://www.ftc.gov/bcp/edu/microsites/idtheft/comsu,ers/about-identity-theft.html.
[7] *See,* http://www.gao.gov/new.items/d07737.pdf.

security number, rent a house or get medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.

39.     The unauthorized disclosure of a person's social security number can be particularly damaging since social security numbers cannot be easily replaced like a credit card. In order to obtain a new social security number, a person must show evidence that someone is using the number fraudulently or is being disadvantaged by the misuse.[8]  Thus, a person whose personal information has been stolen cannot obtain a new social security number until the damage has already been done.  Furthermore, obtaining a new social security number is not an absolute prevention against identity theft.  Governmental agencies, private businesses, and credit reporting businesses likely still have the person's records under the old number, and using a new number will not guarantee a fresh start.  For some victims of identity theft a new number may actually create new problems.  Because prior positive credit information is not associated with the new social security number, it is more difficult to obtain credit due to the absence of a credit history.

40.     Thus, Plaintiff and the Class Members now face years of constant surveillance, monitoring and loss of rights, not to determine whether they will become an identity theft victim, because they already are, but to prevent further loss and damage.

## CLASS ACTION ALLEGATIONS

41.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this class action, individually and on behalf of all other persons whose Confidential Information was stolen, disseminated and/or sold by Defendants and/or Defendants' employees as part of an impermissible dissemination to Buyers, without the consent of customers, during the period

[8]*See,* Identity Theft and Your Social Security Number, SSA Publication No. 05-10064, October 2007, ICN 46327.

beginning in January 1, 2006 to the present ("the Class"). The Class includes those persons or entities whose Confidential Information was disseminated and/or sold by Defendants and/or Defendants' employees. The Class does not include Defendants, or their officers, directors, agents or employees.

42.     On information and belief, the Class is comprised of millions of consumers, making the joinder of such cases impracticable. Disposition of the claims in a class action will provide substantial benefits to both the parties and the Court.

43.     The rights of each member of the Class were violated in a similar fashion based upon Defendants' uniform actions. Some common issues present here are"

> a.  Whether Defendants were negligent in collecting and storing Plaintiff's and Class Members' Confidential Information;
>
> b.  Whether Defendants took reasonable steps and measures to safeguard Plaintiff's and Class Members' Confidential Information;
>
> c.  Whether Defendants' conduct was reckless;
>
> d.  Whether Defendants breached their duty to exercise reasonable care in storing Plaintiff's and Class Members' Confidential Information by storing that information on their computer systems in the manner in which it did;
>
> e.  Whether implied contracts existed between Defendants and Plaintiff and Class Members;
>
> f.  Whether Defendants' failure to protect the personal information of Plaintiff and the Class Members violated their legally-protected privacy interest under the Constitution;

g.  Whether Plaintiff and the Class Members are at an increased risk of identity theft as a result of Defendants' failure to protect the personal information of Plaintiff and the Class Members;

h.  Whether Plaintiff and Class Members have sustained damages, and if so, what is the proper measure of those damages; and

i.  Whether statutory damages are proper in this matter, and in what amount.

44.  Plaintiff's claims are typical of the claims of the respective Class they seek to represent, because the Confidential Information of Plaintiff, like the Confidential Information of all members of the proposed Class Members, was intentionally and illegally distributed and/or sold by employees, representative, and/or agents of Defendants.

45.  Plaintiff will fairly and adequately represent and protect the interests of the Class, in that he has no interest that is antagonistic to or that irreconcilably conflicts with those of other members of the Class.

46.  Plaintiff has retained counsel competent and experienced in the prosecution of class action litigation.

47.  A class action is superior to all other available methods for the fair and efficient adjudication of Plaintiff's and Class Members' claims. Plaintiff and Class Members have suffered harm as a result of Defendants' conduct. Certification of a class action to resolve these disputes will reduce the possibility of repetitious litigation involving potentially millions of class members. Further, certification is appropriate under Federal Rules of Civil Procedure 23, as the Class satisfies the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3).

## FIRST CAUSE OF ACTION

## INTENTIONAL VIOLATION OF THE FAIR CREDIT REPORTING ACT

48.     Plaintiff re-alleges each and every paragraph of this Complaint as if fully set forth herein.

49.     This is a claim for violation of Fair Credit Reporting Act ("FCRA").

50.     FCRA was created to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." *See* 15 U.S.C. § 1681 *et sec.*

51.     Under FCRA, a "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for credit or insurance to be used primarily for personal, family, or household purposes; employment purposes; or any other purpose authorized under 15 U.S.C. § 1681b, 15 U.S.C. § 1681a(d)(1).

52.     Further, a "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

53.     Plaintiff and the other Class Members are "consumers" or "persons", as defined and construed under FCRA (15 U.S.C. §§ 1681a(b) & (c)).

54.     Defendants are Consumer Reporting Agencies as defined under FCRA because they, for monetary fees, regularly engage in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing Consumer Reports to third parties, and use interstate commerce for the purpose of preparing or furnishing consumer reports.

55.     Defendants maintain Consumer Reports as defined under the FCRA, because they are written, oral, or other communications of any information which bear on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for credit or insurance to be used primarily for personal, family, or household purposed; employment purposes; or any other purpose authorized under section 15 U.S.C. § 1681b.

56.     The consumer information sold by Defendants' employee amounted to Consumer Reports as defined under the FCRA.

57.     As a Consumer Reporting Agency, Defendants are required to maintain reasonable procedures designed to limit the furnishing of Consumer Reports to the permissible purposes outlined under FCRA.  *See* 15 U.S.C. § 1681e.

58.     In conscious disregard for the rights of Plaintiff and the Class Members, Defendants deliberately and/or recklessly did not maintain reasonable procedures designed to limit the furnishing of Consumer Reports to the permissible purpose outlined under FCRA, specifically 15 U.S.C. § 1681e.

59.   As enumerated above, the Defendants' reckless conduct allowed their high-level employee to obtain the subject Consumer Reports and sell them to third-parties without Plaintiff's or Class Members' consent and for no permissible purpose under FCRA.

60.   Further, Defendants are responsible for their employee's actions as an agent of the Defendants.

61.   Defendants' conduct violated FCRA and Plaintiff and Class Members have been damaged by Defendants' reckless action.  At all times material, Defendants had full knowledge of their employees' conduct, or should have known or foreseen their employees' conduct.

62.   As a result of Defendants' conduct Plaintiff is entitled to actual damages sustained or statutory damages of not less than $100 and not more than $1,000, as well as the costs and attorney's fees in bringing this action. 15 U.S.C. § 1681n.

**SECOND CAUSE OF ACTION**

**<u>NEGLIGENT VIOLATIONS OF THE FAIR CREDIT REPORTING ACT</u>**

63.   Plaintiff restates and realleges each and every paragraph of this Complaint as if fully rewritten herein.

64.   This is a claim for negligent violation of Fair Credit Reporting Act ("FCRA").

65.   FCRA was created to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." *See* 15 U.S.C. § 1681 *et sec.*

66.   Under FCRA, a "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's

credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for credit or insurance to be used primarily for personal, family, or household purposes; employment purposes; or any other purpose authorized under 15 U.S.C. § 1681b, 15 U.S.C. § 1681a(d)(1).

67. Further, a "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

68. Plaintiff and the other Class Members are "consumers" or "persons", as defined and construed under FCRA (15 U.S.C. §§ 1681a(b) & (c)).

69. Defendants are Consumer Reporting Agencies as defined under FCRA because they, for monetary fees, regularly engage in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses interstate commerce for the purpose of preparing or furnishing consumer reports.

70. Defendants maintain consumer reports as defined under the FCRA, because they are written, oral, or other communications of any information which bear on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for credit or

insurance to be used primarily for personal, family, or household purposed; employment purposes; or any other purpose authorized under section 15 U.S.C. § 1681b.

71.     The consumer information sold by Defendants' employee amounted to Consumer Reports as defined under the FCRA.

72.     As Consumer Reporting Agencies, Defendants are required to maintain reasonable procedures designed to limit the furnishing of reports to the permissible purpose outlined under FCRA to avoid improper dissemination of consumer reports. *See* 15 U.S.C. § 1681e.

73.     Defendants were negligent in failing to maintain reasonable procedures to protect their consumer reports.

74.     As enumerated above, the Defendants' negligent conduct allowed their high-level employee to obtain the subject consumer reports and sell them to third-parties without Plaintiff's or Class Members' consent and for no permissible purpose under FCRA.

75.     Further, Defendants are responsible for their employee's actions as an agent of the Defendants.

76.     Defendants' conduct violated FCRA and Plaintiff and Class Members have been damaged by Defendants' negligent conduct.

77.     As a result of Defendants' conduct Plaintiff is entitled to actual damages to be proven at trial, as well as the costs and attorney's fees in bringing this action. 15 U.S.C. § 1681o.

### THIRD CAUSE OF ACTION

### NEGLIGENCE

78.     Plaintiff restates and realleges each and every paragraph of this Complaint as if fully rewritten herein.

79.     Defendants came into possession of Plaintiff's and the Class Members' Confidential Information and had a duty to exercise reasonable care in safeguarding and protecting such information from being compromised and/or stolen.

80.     Defendants had a duty to timely disclose the fact that Plaintiff's and the Class Members' Confidential Information within their possession had been, or was reasonable believed to have been, compromised.

81.     Defendants had a duty to protect Plaintiff's Confidential Information within their possession.

82.     Defendants further had a duty to hire and supervise trustworthy employees as well as to have procedures in place to detect and prevent dissemination of Plaintiff's Confidential Information by their employees.  This breach of security and unauthorized access was reasonably foreseeable to Defendants.

83.     Defendants, through their acts and/or omissions, unlawfully breached their duty to Plaintiff and the Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Confidential Information within their possession.

84.     Defendants through their actions and/or omission breached their duty to timely disclose the fact that Plaintiff's and the Class Members' Confidential Information within their possession had been or was reasonably believed to have been compromised.

85. But for Defendants' negligent and wrongful breach of their duties owed to Plaintiff and the Class Members, Plaintiff's and the Class Members' Confidential Information would not have been compromised.

86.     Plaintiff's and the Class Members' Confidential Information was compromised, viewed and/or stolen as the proximate result of Defendants failing to exercise reasonable care in

safeguarding such information by adopting, implementing, or maintaining appropriate security measures to protect and safeguard the private, non-public, personal and financial information within their possession.

87.    Plaintiff and the Class Members suffered actual damages including, but not limited to, expenses for credit monitoring, identity theft insurance, anxiety, emotional distress, loss of privacy, and other economic and non-economic harm.

## FOURTH CAUSE OF ACTION

## NEGLIGENCE PER SE

88.    Plaintiff restates and realleges each and every paragraph of this Complaint as if fully rewritten herein.

89.    In addition to the FCRA, the GLBA (15 USC §6801) provides:

(a)    Privacy obligation policy

It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information.

(b)    Financial institutions safeguards

In furtherance of the policy in subsection (a) of this section, each agency or authority described in section 6805(a) of this title shall establish appropriate standards for the financial institutions subject to their jurisdiction relating to administrative, technical, and physical safeguards -

(1) to insure the security and confidentiality of customer records and information;

(2) to protect against any anticipated threats or hazards to the security or integrity of such records; and

(3) to protect against unauthorized access to or use of such records or information which could result in substantial harm or inconvenience to any customer.

21

90.   Defendants' conduct constitutes a violation their regulatory and statutory duties, including, but not limited to, violations of the FCRA and the GLBA.

91.   Defendants' violation of these regulatory and statutory duties constitutes negligence per se.

92.   As a direct and proximate result of the Defendants' negligence per se, the Plaintiff and the Class Members have suffered harm and damages, the full extent of which will be proven at trial.

**FIFTH CAUSE OF ACTION**

**BREACH OF IMPLIED CONTRACT**

93.   Plaintiff restates and realleges each and every paragraph of this Complaint as if fully rewritten herein.

94.   Defendants came into possession of Plaintiff's and the Class Members' Confidential Information and had an implied contract to protect such information with Plaintiff and the Class Members, via Plaintiff's and the Class Members' financial institution's privacy notices.

95.   The implied contract required Defendants to not disclose the Plaintiff's and the Class Members' Confidential Information and to safeguard and protect the information from being compromised and/or stolen.

96.   Defendants did not safeguard and protect Plaintiff's and the Class Members' Confidential Information from being compromised and/or stolen.  Indeed, Defendants disclosed this information to the public.

97.   Because Defendants disclosed Plaintiff's and Class Members' Confidential Information and failed to safeguard and protect Plaintiff's and the Class Members' Confidential

Information from being compromised and/or stolen, Defendants breached their contract with Plaintiff and the Class Members.

98.    Plaintiff and the Class Members suffered actual damages, the full extent of which will be proven at trial.

## SIXTH CAUSE OF ACTION

### BAILMENT

99.    Plaintiff restates and realleges each and every paragraph of this Complaint as if fully rewritten herein.

100.    Plaintiff and the Class Members delivered and entrusted their Confidential Information to Defendants for the sole purpose of applying for mortgage loans with the Defendants.

101.    During the time of the bailment, Defendants owed Plaintiff and the Class Members a duty to maintain the confidentiality of their Confidential Information by safeguarding it and implementing and enforcing reasonable security procedures, policies and practices.

102.    Defendants breached this duty.

103.    As a direct and proximate result of this breach, Plaintiff and the Class Members have suffered damages, the full extent of which will be proven at trial.

## SEVENTH CAUSE OF ACTION

### CONVERSION

104.    Plaintiff restates and realleges each and every paragraph of this Complaint as if fully rewritten herein.

105.   Plaintiff and the Class Members have legal and possessory rights to their Confidential Information, which is legal property.

106.   Plaintiff and the Class Members entrusted their Confidential Information to the Defendants.

107.   Defendants, without the Plaintiff's and Class Members' authorization, knowledge and/or consent, deliberately, recklessly and/or negligently sold Plaintiff's and Class Members' Confidential Information.

108.   As a direct and proximate result of Defendants' conversion, Plaintiff and the Class Members have suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff individually on behalf of himself, and all others similarly situated, respectfully asks that this Court enter an Order:

(a)   Certifying the proposed nationwide Class herein under Federal Rule of Civil Procedure 23(a) and/or (b)(3) and appointing Plaintiff and Plaintiff's counsel to represent the Class;

(b)   Finding that Defendants are liable under all of the legal claims asserted herein for their failure to safeguard and protect Plaintiff's and Class Members' Confidential Information stored on their computer systems and in their physical possession;

(c)   Finding the Defendants are responsible for their employees' actions as agents of Defendants;

(d)   Enjoining Defendants from action which places consumers at a risk of future security breaches;

(e)   Requiring Defendants to identify to Plaintiff and Class Members who had their information breached and sold;

(f)   Award injunctive relief, including but not limited to: (i) the provision of credit monitoring and/or credit card monitoring services for the Class; (ii) the provision of identity theft insurance for the Class; and (iii) the requirement that Defendants receive periodic compliance audits by a third party regarding the security of their computer systems used for processing and storing customer data;

(g)   Award compensation to anyone who suffers damages as a result of the unauthorized release of their Confidential Information;

(h)   Awarding damages to Plaintiff and Class Members under the common law theories alleged herein;

(i)   Awarding statutory, punitive, and/or treble damages as provided under relevant laws;

(j)   Entering declaratory relief as this Court deems appropriate;

(k)   Awarding all costs, including experts' fees and attorneys' fees and the costs of prosecuting this action;

(l)   For an order awarding pre-judgment and post-judgment interest as prescribed by law; and

(m)   Providing for other legal and/or equitable relief as is permitted at law and as justice requires.

## JURY DEMAND

Plaintiff, on behalf of himself and the putative class, demand a trial by jury on all issues so triable.

Dated: _9/30/08_

Respectfully submitted,

By: _____
SCOTT WM WEINSTEIN, ESQ.
Florida Bar No. 563080
Morgan & Morgan, P.A.
P. O. Box 9504
Fort Myers, FL  33906-9504
Telephone: (239) 433-6880
Facsimile: (239) 433-6836
Email:  sweinstein@forthepeople.com


MICHAEL GOETZ, Esq.
Florida Bar No. 963984
MORGAN & MORGAN, P.A.
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402
Email: mgoetz@forthepeople.com